Henry J. Latham, J.
This action arises from a dispute over who will control organized soccer football in and about the metropolitan area of this State. There is little dispute with regard to the facts.
Organized soccer football is almost exclusively in the hands of nonpaid volunteers interested in the sport. Control is exercised and funds to maintain the organizations are raised by the distribution and sale of registration forms from the top down through the system of organization. Plaintiff is a New York membership corporation which, until October 8, 1955, controlled this sport in and about the metropolitan area. It has for its members six leagues which in turn have for their members various teams made up of players. Like other State organizations of similar nature, plaintiff was a member of the defendant corporation, likewise a domestic membership corporation, which is a national organization directing and controlling the sport and which will hereafter be referred to as the “ defendant.”
On October 8, 1958, defendant suspended the plaintiff and in its place set up a commission to run the sport and excluded plaintiff from control over soccer in this area which was the purpose for which the plaintiff was organized. Thus, plaintiff *698 was bypassed in the distribution of the necessary forms and its revenues were effectively cut off. Contending that such suspension was illegal and that it has been damaged in loss of revenues and the destruction of the purposes for which it was formed, plaintiff seeks redress, by way of a permanent injunction, restraining the defendant, its executive secretary and James P. McGuire, the chairman of the commission referred to above, 1‘ from suspending and failing to recognize the Plaintiff as the governing State Association for that part of the State of New York, not otherwise under the jurisdiction of the Northwestern New York State Football Association; from interfering with or prohibiting the governing of soccer football by the Plaintiff within its said jurisdiction in New York State; from ordering a new election of officers of the Plaintiff ’ ’, directing defendants ‘ ‘ to dissolve the Commission appointed by the Defendant Corporation on or about the 8th day of October, 1958, to govern soccer football in the State of New York ” and for incidental relief. During the trial, the action was discontinued as to the defendant McGuire.
The essential facts leading to plaintiff’s suspension are as follows: At its annual meeting held on September 14, 1957, rule 9 of its constitution was amended as follows: “ The Board of Directors of this Association shall be composed of President, 2 Vice Presidents, Secretary, Treasurer, an honorary President; and two commissioners. The two commissioners to have a vote at the Annual Meeting.” [Matter in italics is new.] Five of its six member leagues voted in favor of the foregoing amendment.
This amendment, along with others, was submitted by a formal letter of the plaintiff to the chairman of defendant’s rules and revision committee, as required by the latter’s constitution and by-laws. On December 16, 1957 said chairman wrote the plaintiff that “ The changes made in your State Rules, are hereby approved as of this Date.” While no formal protest was sent by the defendant to the plaintiff, some evidence was presented that at defendant’s annual meeting, which was held on July 26 and 27, 1958, it expressed disapproval to others than the plaintiff.
The chairman of defendant’s rules and revision committee made a report which in part reads as follows:
‘ ‘ As chairman of the Rules & Revision Committee I have had a number of requests for ruling and opinions. One important ruling I had to make was to a State Association that was allowing its retiring officers to vote for officers for the coming year. I ruled that at an Election of Officers, only Dele *699 gates are permitted to vote; all Officers and Commissioners are out of office at that part of the Annual Meeting and cannot vote.
“ There seems to be some misunderstanding regarding Junior Leagues and Clubs. I found that some State Associations affiliate Juniors and charge them a fee for affiliation and allow them to vote. It has been understood for a number of years that Junior Clubs or leagues be affiliated without fees and they are not permitted to vote but can take part in debates.”
The evidence indicates, however, that this report was never formally presented to the annual meeting, read, adopted or incorporated in defendant’s minutes as required by its rules, the pertinent part of which reads as follows: “ All reports shall be presented to the Council in writing and after being read and adopted shall be incorporated in the minutes of the Council.”
On September 6, 1958 plaintiff held its annual meeting and by secret ballot, as provided in defendant’s by-laws, elected its regular officers and two commissioners. The two commissioners previously elected, pursuant to the change in plaintiff’s by-laws, voted at this meeting. There was evidence that the question of the right of the commissioners to vote was raised at this meeting, but the chair ruled that the written ruling of defendant approving plaintiff’s changes was clear and final.
Subsequent to this annual meeting of the plaintiff, three of its members protested and appealed the election of officers to the defendant, alleging that it was contrary to the ruling of the defendant in that the commissioners were allowed to vote at the election for officers, including themselves. Copies of this protest were served on the plaintiff. Replies were filed denying illegality. A hearing was held upon notice to the plaintiff. After a full discussion, plaintiff was suspended on October 8, 1958, stripped of authority, and a commission appointed in its place to run soccer in plaintiff’s area.
This case turns upon the legality of plaintiff’s election of the two commissioners at its meeting of September 6, 1958. The court holds that this election was legal and that plaintiff was improperly suspended by the defendant.
Nothing in defendant’s by-laws or constitution prohibited the changes authorizing the appointment of two commissioners with the right to vote, and defendant, in simple and clear language, approved the change. Plaintiff elected the two commissioners in reliance on this approval. The defendants admitted paragraph Eighth of plaintiff’s complaint “That the changes to the Constitution, By-Laws, Rules and Regulations *700 of the Plaintiff duly made at its annual meeting in September, 1957, had been submitted to the Rules and Revisions Committee of the Defendant Corporation pursuant to the Constitution and Rules of the Defendant Corporation and said changes were duly approved by said Rules and Revisions Committee.” The court perceives nothing illegal, immoral or repugnant in the two commissioners voting for themselves if, indeed, they did so. The election was by secret ballot.
The power of the defendant to suspend one of its members is set forth in rule XIV (3) of the constitution and rules of the defendant as amended, and is confined thereby to ‘ 4 the violation of the Constitution and Rules of the United States Soccer Football Association, Incorporated or of the decisions, mandates and rules of the National Commission or of the Council ”. This court finds that the plaintiff did not violate the constitution and rules of the defendant or the decisions, mandates and rules of the national commission or of the council.
As for the defense asserted in the answer that the plaintiff has not exhausted its remedies within the framework of organized soccer, the court is of the opinion that in the circumstances here presented, the plaintiff was not required to do so before seeking redress in this court of equity. As noted above, the defendant’s constitution and rules limited suspension to situations where the result of its investigations reveals the violation of the constitution and rules of the defendant or of the decisions, mandates and rules of the national commission or of the council, and this court has already found that plaintiff did not violate this provision, and, therefore, did not breach its 44 contract ” with the defendant. (Polin v. Kaplan, 257 N. Y. 277, 281.)
While the Court of Appeals held in that case at page 282 that if the contract, consisting of the constitution and by-laws of an unincorporated association 4 4 reasonably provides that the performance of certain acts will constitute a sufficient cause for the expulsion of a member, and that charges of their performance, with notice to the member, shall be tried before a tribunal set up by the association, the provision is exclusive, ’ ’ the court added: 4 4 This is not to say, however, that a court will decline to interfere, if an expulsion has been decreed for acts not constituting violations of the constitution and by-laws, and not made expellable offenses thereby, either by terms expressed or implied. In such an instance, the expulsion is not within the power conferred by the contract.” (Emphasis supplied.)
In addition, the evidence indicates that the soccer season is now in full swing; that unless plaintiff is reinstated it will *701 atrophy and die of financial malnutrition, unable to collect dues to finance its activities, including representation at meetings and conventions in various parts of the country, or to perform the functions for which it was organized. Under these circumstances, the plaintiff was not required to pursue its remedies within the organization as a prerequisite to resort to the courts of this State. (Madden v. Atkins, 4 A D 2d 1, 5, mod. 4 N Y 2d 283, and the authorities cited p. 291; Rodier v. Huddell, 232 App. Div. 531.)
Judgment, without costs is, accordingly granted in favor of the plaintiff setting aside its suspension by the defendant and reinstating it as the governing State Association for that part of the State of New York not otherwise under the jurisdiction of the Northwestern New York State Football Association, and for the incidental relief prayed for in the complaint, based upon the facts therein alleged.
Settle judgment on two days’ notice.